**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X

**UTICA LEASECO, LLC,**                                                                      :

                     **Plaintiff,**                                          :          **Civil Action No. _____**

          **-against-**                                               :

                                             :          **COMPLAINT**

                                           :

**SPATIUM ENTERPRISE LLC d/b/a EMPORIO JETS**
**and ROBERT VIDAL,**                                                            :

                                           :

                    **Defendants.**

-------------------------------------------------------------------------X

       Plaintiff Utica Leaseco, LLC ("Plaintiff" or "Utica"), complaining of Defendants Spatium

Enterprise LLC d/b/a Emporio Jets and Robert Vidal (hereinafter, collectively, the "Defendants"),

hereby alleges as follows:

<u>**NATURE OF THE ACTION**</u>

       1.      This is an action by Utica seeking monetary damages in excess of $440,000.00,

replevin of collateral and attorneys' fees and costs expended as a result of a default on a certain

promissory note (the "Note") in the principal amount of $456,000.00 by Defendant Spatium

Enterprise LLC d/b/a Emporio Jets (the "Borrower"), whose payment and performance

obligations thereunder were personally guaranteed by Defendant Robert Vidal ("Vidal") pursuant

to a written guaranty (the "Guaranty").  Defendant Vidal is also in default of his obligations

under the Guaranty by failing to make the payments due thereunder.

       2.      As security for the Note, the Borrower also entered into a Security Agreement

(defined below) with Utica, securing its obligations under the executed Note by granting to Utica

a first priority security interest in, among other things, a certain Aircraft (defined below) and

other collateral as set forth therein.

2283898v3

3.     Defendants' defaults under the Note, Security Agreement and Guaranty, respectively, are further compounded by Defendants' acts of fraud on Utica, having, among other things, intentionally submitted to Utica falsified certificates of insurance and hangar lease documents in order to obtain financing from Utica.

4.     Moreover, Utica recently learned that, contrary to Defendants' representations, Borrower entered into two separate finance lease agreements with two separate and distinct third parties, to lease, with options to purchase, the Aircraft within a six (6) month period prior to Utica's financing of the Aircraft, for which Borrower has already collected at least $320,000.00 in proceeds therewith.

5.     Borrower has since sold the Aircraft, which, upon information and belief, was recently destroyed by fire in Guatemala.

## THE PARTIES

6.     Plaintiff Utica Leaseco, LLC was and is, at all times relevant to the allegations herein, a limited liability company.

7.     Plaintiff Utica Leaseco, LLC is comprised of the following members:

a.     David Levy, who was and is, at all times relevant to the allegations set forth herein, an individual residing in the State of Michigan.

b.     Robert Levy, who was and is, at all times relevant to the allegations set forth herein, an individual residing in the State of Michigan.

c.     Craig Stormer, who was and is, at all times relevant to the allegations set forth herein, an individual residing in the State of Michigan.

d.     Levy Family Utica, LLC, which was and is, at all times relevant to the allegations set forth herein, a limited liability company.

2283898v3

     e.     Stormer Family Utica, LLC, which was and is, at all times relevant to the allegations set forth herein, a limited liability company.

8.     Levy Family Utica, LLC is comprised of the following members:

   a.  David Levy, who was and is, at all times relevant to the allegations set forth herein, an individual residing in the State of Michigan.

   b.  Ann Levy, who was and is, at all times relevant to the allegations set forth herein, an individual residing in the State of Michigan.

   c.  Kate Levy, who was and is, at all times relevant to the allegations set forth herein, an individual residing in the New York.

   d.  Jill Gilpin, who was and is, at all times relevant to the allegations set forth herein, an individual residing in the State of Michigan.

   e.  Allison Levy, who was and is, at all times relevant to the allegations set forth herein, an individual residing in the State of New Hampshire.

9.     Stormer Family Utica, LLC is comprised of the following members:

   a.  Craig Stormer, who was and is, at all times relevant to the allegations set forth herein, an individual residing in the State of Michigan.

   b.  Colleen Stormer, who was and is, at all times relevant to the allegations set forth herein, an individual residing in the State of Michigan.

   c.  Renate LaCroix, who was and is, at all times relevant to the allegations set forth herein, an individual residing in the State of Michigan.

   d.  Monika Stormer, who was and is, at all times relevant to the allegations set forth herein, an individual residing in the State of Michigan.

e.  Brendan Stormer, who was and is, at all times relevant to the allegations set forth herein, an individual residing in the State of Michigan.

f.  Conner Stormer, who was and is, at all times relevant to the allegations set forth herein, an individual residing in the State of Michigan.

10.  Upon information and belief, Defendant Spatium Enterprise LLC d/b/a Emporio Jets was and is, at all times relevant to the allegations herein, a limited liability company.

11.  Upon information and belief, Defendant Spatium Enterprise LLC d/b/a Emporio Jets is comprised of a single member:  Robert Vidal.

12.  Upon information and belief, Defendant Vidal was and is, at all times relevant to the allegations herein, an individual residing in the State of Florida.

## JURISDICTION AND VENUE

13.  This Court has jurisdiction over this action by virtue of 28 U.S.C. § 1332, in that Plaintiff and Defendants are citizens of different states, and the value of the amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

14.  Venue is predicated on 28 U.S.C. § 1391 (b)(3), in that, *inter alia*, Defendants irrevocably submitted to the jurisdiction of the New York courts located within the Southern District of New York pursuant to the Loan Documents and Guaranty (each defined below).  In addition, venue is also proper in the Southern District of New York pursuant to the Loan Documents and Guaranty.

## BACKGROUND ALLEGATIONS

I.       **The Loan Transaction**

      A.       **The Note**

15.     On or about October 10, 2019, Utica, as lender, made a loan to Borrower (the "Loan"), which Loan was evidenced by Borrower's execution of a certain promissory note dated October 10, 2019 in the principal amount of $456,000.00 (the "Original Note").  A true and accurate copy of the Original Note is annexed hereto as part of Exhibit A and incorporated herein by reference.

16.     Pursuant to the Original Note, Borrower was required to pay to Utica forty-eight (48) consecutive monthly payments of principal and interest as set forth in the Note (the "Monthly Payments").

17.     The Monthly Payments commenced on November 10, 2019 and were due and payable on the 10th day of each and every month thereafter for forty-eight (48) months.

18.     The Monthly Payments were each in the amount of $12,008.23.

19.     On or about May 4, 2020, Utica and Borrower entered into a certain First Amendment to Loan and Aircraft Security Agreement effective as of April 10, 2020 (the "First Amendment") providing, among other things, an amendment to the payment schedule to the Original Note.  (The First Amendment, together with the Original Note, as the same may be hereafter amended, modified, restated, renewed, replaced, supplemented or extended, collectively, the "Note").  A true and accurate copy of the First Amendment is annexed hereto as part of Exhibit A.

20.     Utica is the holder of the Note.

2283898v3

21.     The First Amendment provided, among other things, a revised amortization schedule, pursuant to which Borrower was permitted to pay Utica three (3) monthly payments of interest only ("Interim Interest Payments").

22.     The Interim Interest Payments commenced on April 10, 2020 and were due and payable on the 10th day of each and every month thereafter for a total of three (3) months.

23.     The Interim Interest Payments were each in the amount of $4,500.00.

24.     Pursuant to the First Amendment to Loan and Aircraft Security Agreement, the Monthly Payments shall resume on July 10, 2020 and are due on the 10th day of each and every month thereafter.

25.     The Monthly Payments, commencing on July 10, 2020 and each and every month thereafter, were each in the amount of $12,730.64.

26.     Borrower defaulted under the Note by, among other things, failing to make its Interim Interest Payment to Utica due on May 10, 2020 and each and every Interim Interest Payment and/or Monthly Payment due thereafter.

27.     In the event of a default, the Note provides that the unpaid principal balance, all accrued interest and any other sums due under the Note shall become immediately due and payable without further notice of any kind.

28.     Although not required, Utica provided Defendants with notice of their default by, among other things, a written Notice of Default.

29.     In the event of a default, the Note also provides that a default rate of interest of eighteen percent (18%) *per annum* shall be applied from the date of default through the date of payment ("Default Rate Interest").

30. The Note further provides that an automatic or declared acceleration of the amounts due and owing by Borrower thereunder constitutes an involuntary prepayment for which a prepayment premium in the amount of $10,000.00 shall also be due and payable (the "Prepayment Premium").

### B. The Loan and Security Agreement

31. As further security for Borrower's obligations to Utica under the Note, Utica and Borrower entered into and executed a certain Loan and Aircraft Security Agreement dated as of October 10, 2019 (the "Security Agreement"). A true and accurate copy of the Security Agreement is annexed hereto as Exhibit B and is incorporated herein by reference.

32. Pursuant to the Security Agreement, Borrower granted Utica a first priority security interest in, among other things, a Gulfstream Aerospace model G-1159A aircraft, Serial Number 252 and FAA Registration No. N516TR, together with two (2) Rolls Royce Deutschland Ltd. & Co., KG Spey 511-8 aircraft engines bearing manufacturer's serial numbers 8826 and 8882, respectively, and standard avionics and equipment, together with flight logbooks, maintenance and repair records (collectively, the "Aircraft"), as well as other collateral, including, but not limited to, any proceeds thereof (collectively, with the Aircraft, the "Collateral") to secure all sums due and owing to Utica under the Note.

33. Borrower is in default of the Security Agreement as a result of, among other things, Borrower's default under the Note.

34. Utica also recently learned that, at the time of closing, Borrower had already entered into two separate and distinct finance leases for the ultimate sale of the Aircraft.

35. The first lease, a certain Aircraft Lease / Purchase Agreement, dated April 10, 2019 is a finance lease entered into between, and executed by, "Emporio Jets" (Borrower's

2283898v3

D/B/A), as lessor, and Aerojal S.A. de C.V., a Mexican corporation ("Aerojal") whose principal place of business is at Toluca, Mexico, for a term of eighteen (18) months, commencing on April 10, 2019 with an end of lease purchase option ("Lease 1").

36. In connection with Lease 1, Defendants reportedly received a $100,000 Security Deposit.

37. The second lease, a certain Aircraft Financing Lease dated as of September 5, 2019, was entered into between and executed by Spatium Enterprise LLC, as lessor, and Etheralines Corp. ("Etheralines"), as lessee, for a term of eighteen (18) months, commencing on September 5, 2019 with an end of lease mandatory purchase requirement ("Lease 2" and, together with Lease 1, the "Lease Documents").

38. Defendants acknowledged receiving a $220,000 deposit from Etheralines.

39. The Security Agreement prohibits Borrower from selling, assigning, entering into any third party agreement, conveying, mortgaging, exchanging and/or otherwise transferring or relinquishing possession of or disposing of the Aircraft, proceeds or any other part of the Collateral.

40. Upon information and belief, Defendants have collected a total of at least $320,000.00 from Aerojal in connection with Lease 1 and Etheralines in connection with Lease 2.

41. Upon information and belief, Defendants and/or Etheralines moved the Aircraft to Centro De Servicio Aeronautico S.A. de C.V., an FBO (Fixed Base Operation) ("FBO") in Toluca, Mexico.  The FBO listed its customer as Spatium Enterprise LLC and/or Jesica Cagigal.

42. Lease 2 was signed on behalf of Etheralines by Jesica Cagigal Peralvarez.

2283898v3

8

43.     Recently, upon information and belief, Defendants and/or Etheralines sold the Aircraft, where it was flown to Guatemala, landed and set on fire.

44.     According to an Aviation Safety Network report and photograph of the burning Aircraft provided to Utica by the FAA stated on June 19, 2020, "A Gulfstream III jet was set afire after having landed near El Chico, Retalheleu, Guatemala. The aircraft was likely used in illegal drug trafficking.  The registration of the aircraft was not visible on photos but the color schema and type match that of N516TR.  This aircraft was offered for sale recently and was last reported at Chetumal, Mexico (on 18 June) by Flightware."

45.     As such, Borrower is in further default of the Security Agreement.

**C.     The Guaranty**

46.     Defendant Vidal personally guaranteed Borrower's obligations to Utica, pursuant to a written guaranty signed by Vidal in favor of Utica on or about October 10, 2019 (the "Guaranty").  A true and accurate copy of the Guaranty is annexed hereto as Exhibit C and incorporated herein by reference.

47.     Pursuant to the Guaranty, Vidal absolutely and unconditionally guaranteed to Utica, among other things, the full and prompt payment and performance of any and all present and future indebtedness and obligations of Borrower under the Note and Security Agreement (collectively, the "Loan Documents").

48.     Vidal failed to pay Utica the sums due and owing by Borrower under the Guaranty.

49.     As a result, Vidal is in default of the Guaranty.

D.      **Defendants' Fraudulent Acts**

50.     In order to obtain the Loan, Borrower was required to, among other things, insure the Aircraft.

51.     Prior to Utica making the Loan to Borrower, on or about October 8, 2019, Defendants provided a Certificate of Insurance to Utica purportedly covering the policy period from March 14, 2019 to March 14, 2020 ("First Insurance Certificate").

52.     Defendants also provided a subsequent Certificate of Insurance for the policy period covering March 14, 2020 to March 14, 2021 ("Second Insurance Certificate" and, together with the First Insurance Certificate, the "Certificates of Insurance").

53.     The Certificates of Insurance identified Arthur J. Gallagher & Co. as the insurance agency, and QBE as the company who purportedly issued the insurance policy.

54.     Utica recently learned that the Certificates of Insurance submitted by Defendants were falsified.

55.     Specifically, a representative of Arthur J. Gallagher & Co. confirmed that the Certificates of Insurance are not valid and/or not supported by actual, active insurance policies.

56.     Moreover, a representative from QBE further confirmed that the Certificates of Insurance are not valid and/or not supported by actual, active insurance policies.

57.     The Security Agreement provides, among other things, that any failure by Borrower to obtain, maintain and comply with all of the insurance coverages required thereunder, constitutes an Event of Default under the Security Agreement.

58.     Upon information and belief, the Aircraft was never properly insured and/or remain uninsured at the time of its sale and/or destruction.

59.     As such, Defendants are in further default of the Security Agreement.

60. Utica also recently learned that Defendants had submitted a fictitious real property lease providing for storage of the Aircraft at an aircraft hangar prior to closing of the Loan.

61. Specifically, prior to closing, Defendants provided Utica with a "Commercial Lease Agreement" dated February 1, 2019 for the rental of hangar space (the specific hangar is referred to as "Hangar 9" in the Commercial Lease Agreement) for the Aircraft as set forth therein, purportedly entered into between Lynx FBO, as lessor, and Spatium Enterprise LLC, as lessee (the "Commercial Hangar Lease Agreement" and, together with the Certificates of Insurance, the "False Documents").

62. After having been provided with a copy of the fictitious lease, an authorized representative of Lynx FBO ("Lynx"), Tammy Whitmier, confirmed in writing on May 11, 2020 to Utica that the Commercial Hangar Lease Agreement was fraudulent and not a lease that Lynx uses.

63. Specifically, Lynx noted, among other things, that it acquired the hangar facility from World Jet, Inc. on February 1, 2019, but the term of the purported Commercial Hangar Lease Agreement between Defendants and Lynx commenced August 1, 2016, almost three years before Lynx acquired the facility, and that neither Lynx nor World Jet, Inc. has a listing of Spatium Enterprise LLC nor Robert Vidal as a prior customer at that time.

64. Lynx further confirmed in writing that the subject Aircraft cannot fit into Hangar 9 due to door height and wing span width limitations.

65. Borrower's submission of one or more False Documents constitutes, at minimum, a further default under the Security Agreement.

## COUNT I

### (Breach of Note against Defendant Spatium Enterprise LLC)

66.     Plaintiff repeats, reiterates and re-alleges the allegations contained in paragraphs 1 through 30 inclusive of the Complaint with the same force and effect as if more fully set forth at length herein.

67.     Borrower defaulted under the Note by, among other things, failing to make the Interim Interest Payment due to Utica on May 10, 2020 and each and every Interim Interest Payment and/or Monthly Payment due thereafter under the Note.

68.     In the event of a default, the Note provides that Utica has the right to the outstanding principal balance plus all applicable interest and all other sums due and owing under the Note immediately due and payable.

69.     By reason of the foregoing, there is presently due and owing as of June 26, 2020, from Borrower to Utica under the Note the outstanding principal balance of $418,006.55, plus accrued interest in the amount of $10,729.18, plus Default Rate Interest in the amount of $1,637.01 (which continues to accrue), plus late charges in the amount of $450.00, plus Prepayment Premium in the amount of $10,000.00, for a total of $440,822.74, plus such other fees and costs which are, or will be, due under the Note.

## COUNT II

### (Breach of Guaranty against Defendant Vidal)

70.     Plaintiff repeats, reiterates and re-alleges the allegations contained in paragraphs 1 through 49 inclusive of the Complaint with the same force and effect as if more fully set forth at length herein.

71.    Pursuant to the Guaranty, Defendant Vidal absolutely and unconditionally guaranteed to Utica, among other things, the full and prompt payment and performance of any and all present and future indebtedness and obligations of the Borrower under the Loan Documents.

72.    Defendant Vidal failed to pay Utica the sums due and owing by the Borrower under the Guaranty.

73.    As a result, Defendant Vidal is in default of the Guaranty.

74.    By reason of the foregoing, there is presently due and owing as of June 26, 2020, from Defendant Vidal to Utica under the Guaranty and the Loan Documents an outstanding principal balance of $418,006.55, plus accrued interest in the amount of $10,729.18, plus Default Rate Interest in the amount of $1,637.01 (which continues to accrue), plus late charges in the amount of $450.00, plus Prepayment Premium in the amount of $10,000.00, for a total of $440,822.74, plus such other fees and costs which are, or will be, due under the Guaranty and the Loan Documents.

## COUNT III

### (Fraud against Defendants)

75.    Plaintiff repeats, reiterates and re-alleges the allegations contained in paragraphs 1 through 65 inclusive of the Complaint with the same force and effect as if more fully set forth at length herein.

76.    Defendants made multiple material misrepresentations of fact when they among other things, submitted one or more False Documents to Utica in an effort to procure financing from Utica for the Aircraft.

77.     Defendants knew that the documents they were submitting to Utica, and the statements made to Utica, were fabricated.

78.     Defendants intended for Utica to rely upon the False Documents and misrepresentations of fact so that Utica would agree to extend a loan to Defendants.

79.     Utica relied upon what it believed to be a *bona fide* Certificates of Insurance submitted by Defendants, as well as a *bona fide* Commercial Hangar Lease Agreement, in order to extend financing to Borrower for the purchase of the Aircraft.

80.     Utica would not have made the Loan and/or extended any other financing to Borrower had it known that the documentation provided by and representations made to Utica by Defendants were false.

81.     Defendants defrauded Utica.

82.     As a result, Utica has suffered damages in an amount to be determined at trial, but believed to be at least $440,000.00.

## COUNT IV

### (Repossession of Collateral against Defendants)

83.     Plaintiff repeats, reiterates and re-alleges the allegations contained in paragraphs 1 through 65 inclusive of the Complaint with the same force and effect as if more fully set forth at length herein.

84.     Pursuant to the terms and conditions of the Security Agreement, Borrower granted Utica a first priority security interest in the Collateral, including, but not limited to, the Aircraft, as set forth in the Security Agreement.

85.     Borrower's defaults under the Note also constitute a default under the Security Agreement.

2283898v3

86.    Borrower's submission of one or more False Documents constitutes a default under the Security Agreement.

87.    The Security Agreement provides that in the event of any default thereunder, Utica is entitled to possession of the Collateral.

88.    By reason of the foregoing, Utica is entitled to immediate possession of the Collateral.

## COUNT V

### (Attorneys' Fees and Costs against Defendant Spatium Enterprise LLC)

89.    Plaintiff repeats, reiterates and re-alleges the allegations contained in paragraphs 1 through 45 inclusive of the Complaint with the same force and effect as if more fully set forth at length herein.

90.    Pursuant to the provisions of the Loan Documents, Borrower agreed to pay Utica's attorneys' fees and all other costs and expenses which Utica incurs as a result of, among other things, the enforcement and/or preservation of its rights under the Loan Documents.

91.    By reason of the foregoing, Utica is entitled to all costs and expenses, plus such reasonable attorneys' fees as may be determined by this Court.

## COUNT VI

### (Attorneys' Fees and Costs against Defendant Vidal)

92.    Plaintiff repeats, reiterates and re-alleges the allegations contained in paragraphs 1 through 49 inclusive of the Complaint with the same force and effect as if more fully set forth at length herein.

93.    Pursuant to the provisions of the Guaranty and the Loan Documents, Defendant Vidal agreed to pay Utica's reasonable attorneys' fees and all other costs and expenses which

2283898v3

Utica incurs as a result of, among other things, the enforcement and/or preservation of its rights under the Guaranty and Loan Documents.

94.     By reason of the foregoing, Utica is entitled to all costs and expenses, plus such reasonable attorneys' fees as may be determined by this Court.

WHEREFORE, Plaintiff Utica Leaseco, LLC demands judgment against Defendants Spatium Enterprise LLC and Robert Vidal, as follows:

A.     On Count I against Defendant Spatium Enterprise LLC, awarding Plaintiff the sum of $440,822.74 plus applicable Default Rate Interest, and such other fees and costs which are, or will be, due under the Loan Documents;

B.     On Count II against Defendant Robert Vidal, awarding Plaintiff the sum of $440,822.74 plus applicable Default Rate Interest and such other fees and costs which are, or will be, due under the Guaranty and the Loan Documents;

C.     On Count III against Defendants Spatium Enterprise LLC and Robert Vidal, awarding Plaintiff a sum to be determined at trial, but believed to be at least $440,000.00;

D.     On Count IV against Defendants Spatium Enterprise LLC and Robert Vidal, respectively, awarding Plaintiff repossession of Collateral as set forth in the Loan Documents;

E.     On Count V against Defendant Spatium Enterprise LLC, awarding Plaintiff all costs and expenses, plus such reasonable attorneys' fees as may be determined by this Court;

F.     On Count VI against Defendant Robert Vidal, awarding Plaintiff all costs and expenses, plus such reasonable attorneys' fees as may be determined by this Court;

2283898v3

G.      All with all applicable costs, disbursements and interest, together with such other

and further relief as this Court deems just and proper.

Dated: Garden City, New York
       June 26, 2020

                                        MORITT HOCK & HAMROFF LLP


                            By: _____/s/ Julia Gavrilov_____
                                 Robert S. Cohen
                                 Julia Gavrilov

                                 *Attorneys for Plaintiff Utica Leaseco, LLC*
                                 400 Garden City Plaza
                                 Garden City, NY 11530

2283898v3
                                    17